UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                 Case No. 13-20237

RODERICK GLENN DAVIS,                          HON. AVERN COHN

    Defendant.
_____/

## MEMORANDUM AND ORDER DENYING
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 14)

### I. INTRODUCTION

This is a criminal case. Defendant Roderick Glenn Davis (Davis) is charged in a one count indictment (Doc. 7) for Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Davis is challenging the legality of his arrest by Oakland County Sheriff Deputy Scott McDonald (McDonald) on March 12, 2013. Davis was stopped for a traffic violation and, after McDonald observed a firearm protruding from under the driver's seat in the vehicle, was arrested.

Now before the Court is Davis's motion to suppress evidence (Doc. 14). The Government filed a response (Doc. 15). The Court held an evidentiary hearing on September 3, 2013. Davis's motion is now ready for decision. The motion will be denied. The reasons follow.

### II. BACKGROUND

At the evidentiary hearing, the Government called McDonald as its only witness. The following scenario is taken from McDonald's testimony.

McDonald has been employed as a deputy with the Oakland County Deputy's Office for approximately two years. Prior to his employment with Oakland County, he was employed with the Pontiac Police Department for approximately fifteen years.

On March 12, 2013, McDonald was on duty alone in a semi-marked vehicle–a black Impala with lights and sirens. He was dressed in a t-shirt that says "sheriff" across the front in large black letters and battle dress uniform ("BDU") pants.

At approximately 10:30 p.m., McDonald was driving northbound on Woodward Avenue in the city of Pontiac in the third of four lanes. McDonald observed Davis's Chrysler 300 vehicle turn right onto northbound Woodward from Wilson without signaling. Davis proceeded to drive across to the fourth lane, crossing across McDonald's path. At the evidentiary hearing, McDonald testified that he was "pretty close to the front of [Davis]" when he made the turn onto Woodward, and "[h]e [Davis] came across me [McDonald] in the third lane all the way over to the fourth lane." At this point, McDonald pulled into the fourth lane and activated the lights on his vehicle to initiate a traffic stop. Davis slowed down but continued to roll forward approximately two-hundred feet before coming to a complete stop. McDonald suspected that Davis was slow to pull over because there was some "activity" in the vehicle. However, McDonald could not see anything because the back three windows of Davis's vehicle were tinted.

After Davis pulled over, McDonald exited his vehicle and approached Davis from the driver's side window. The door to Davis's vehicle was closed; Davis had the window down. McDonald had his flashlight in his left hand and the butt of his holstered pistol on his right hand. McDonald asked Davis for his driver's license, registration, and proof of insurance. Davis provided his license and proof of insurance and leaned over toward the glove box

to retrieve the vehicle's registration.

McDonald testified that he did not know Davis personally, but that he had received a tip that Davis was "on the streets" carrying a gun a week prior to the arrest. The tip came by way of a random citizen walking up to McDonald and telling him about Davis. At the time McDonald received the tip, he ran Davis's name in the Law Enforcement Information Network ("LEIN") and discovered that Davis had an outstanding felony warrant for nonpayment of child support. Thus, when Davis handed McDonald his driver's license, McDonald recognized the name. In McDonald's police report generated on the night of the arrest, he stated, "[t]he driver provided the insurance and an Oklahoma driver's license that identified him as Roderick Davis, I knew Roderick Davis to have a Friend of the [C]ourt warrant for over $90,000."

Because Davis's attention was diverted when he leaned over to obtain the registration, McDonald moved forward to check the floorboard and areas in the vehicle that he could not initially see from where he was standing. McDonald used the flashlight to illuminate the floorboard of the vehicle. At this point, McDonald observed the butt of a pistol sticking out approximately three inches from under the driver's seat. McDonald immediately opened the door to the vehicle, asked Davis to turn around in the seat, and he secured him in handcuffs inside the vehicle. Davis was then taken from the vehicle and placed in the back of McDonald's vehicle.

McDonald recovered the pistol from Davis's vehicle. It was loaded. McDonald removed the ammunition from the pistol.

After arresting Davis for carrying a concealed pistol, McDonald ran Davis's name in the LEIN system and again saw the outstanding felony warrant for nonpayment of child

support.

On cross examination, Davis's attorney used demonstrative photographs to question McDonald. The photographs (Ex. 4) depicted Davis's attorney inside the Chrysler 300 Davis was driving on the night he was arrested, with a gun on the floorboard. Through the photographs, Davis's attorney sought to establish that it was not possible for McDonald to see a pistol on the floorboard while Davis's door was closed.

At the hearing, the Court directed the Government to provide information from the Oakland County Circuit Court regarding any warrants related to Davis. The records show that a bench warrant was issued for Davis's arrest for child support arrearage in a 1992 case. The warrant was placed in the LEIN system on March 5, 2008. The warrant was removed from the LEIN system on March 13, 2013, the day after Davis's arrest.

## III. STANDARD OF REVIEW

A judge determines the admissibility of evidence, as a matter of law, outside the presence of the jury. *Jackson v. Denno*, 378 U.S. 368 (1964). At a suppression hearing, the Government bears the burden in establishing admissibility of the evidence by a preponderance. *Lego v. Twomey*, 404 U.S. 477 (1972).

## IV. DISCUSSION

Davis is challenging the search of his vehicle and asks that the pistol that was confiscated be suppressed as evidence. Davis argues that, although the traffic stop may have been legal (based on his failure to use a turn signal when turning onto Woodward Avenue from Wilson), there was no basis for arresting him. In other words, Davis contends that the traffic stop was exceeded in scope in order to manufacture a reason to arrest him. Davis says that he was arrested prior to McDonald observing the pistol in the vehicle. He

says that his documents should have been checked, he should have been issued a ticket, and nothing more. Davis's position is not supported by any evidence proffered at the evidentiary hearing except the photographs used as demonstrative evidence.

**A. The Traffic Stop Was Constitutional**

Under Michigan law, failing to correctly use a turn signal is a civil infraction. Mich. Comp. Laws § 257.648(4). Here, McDonald testified that Davis was initially stopped for failing to use his turn signal when turning onto Woodward Avenue from Wilson. Davis has not cast doubt on McDonald's testimony. Nor has any evidence been proffered challenging the Government's position that McDonald observed Davis turn onto Woodward Avenue without signaling. The decision to stop Davis's vehicle was, therefore, constitutional. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (citations omitted).

Even if McDonald had an ulterior motive for stopping Davis–i.e. the outstanding warrant, the traffic stop was constitutional because McDonald's subjective intentions are irrelevant. *Whren*, 517 U.S. at 813. Davis's failure to correctly use a turn signal, alone, gave McDonald probable cause to initiate a traffic stop.

**B. The Length of the Stop and Search of Davis's Vehicle Was Constitutional**

Davis argues that, even if the basis for the stop was constitutional, his prolonged detention and arrest, and the search of the vehicle, were not. The Court disagrees.

After lawfully stopping and detaining a vehicle for a traffic violation, a police officer is permitted to ask "traffic-related questions, and questions about a driver's identity, business and travel plans." *United States v. Hill*, 195 F.3d 258, 268 (6th Cir. 1999)

(citations omitted). McDonald did just this when he asked Davis for his license, insurance and registration. While Davis was obtaining his registration, McDonald moved closer to the vehicle and used his flashlight to illuminate the floorboard on the driver's side. At this point, McDonald observed a pistol on the floorboard protruding approximately three inches from underneath the seat. This established probable cause to arrest Davis for carrying a concealed weapon. *Hill*, 195 F.3d at 264 (citations omitted) (explaining that a motorist can be further detained if "something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot.").

The subsequent search of the vehicle was justified under the search incident to lawful arrest exception to the warrant requirement. *See United States v. Robinson*, 414 U.S. 218, 231 (1973); *Arizona v. Gant*, 556 U.S. 332 (2009). McDonald's search of the vehicle was contemporaneous to the arrest and he had reason to believe that evidence of Davis's carrying a concealed weapon would be found in the vehicle, justifying the search. *United States v. Chadwick*, 433 U.S. 1 (1977).

In addition, the automobile exception to the warrant requirement justified the search of Davis's vehicle. *See Gant*, 556 U.S. at 347 (reasoning that an officer can conduct a search of a vehicle without a warrant if there is probable cause that the vehicle "contains evidence of criminal activity."). Here, when McDonald observed a pistol on the floorboard, he had probable cause to believe that the vehicle contained evidence of a crime–carrying a concealed weapon. The search of the vehicle was, therefore, appropriate under the automobile exception.

On cross examination at the evidentiary hearing, McDonald was questioned about whether he knew if Davis had a licence to carry a concealed pistol. Whether McDonald

knew for certain at the time of the arrest that Davis did not have a license to carry a concealed pistol is irrelevant to the finding that there was probable cause to initiate an arrest and search the vehicle. Under Michigan law, "[a]n individual licensed . . . to carry a concealed pistol and who is carrying a concealed pistol . . . and who is stopped by a peace officer shall immediately disclose to the peace officer that he or she is carrying a pistol . . . concealed upon his or her person or in his or her vehicle." Mich. Comp. Laws § 28.425f. This was not done here.

Davis also contends that, after he gave McDonald his driver's license, McDonald was dead set on arresting him based on his knowledge that Davis had an outstanding felony warrant. At the evidentiary hearing, McDonald admitted that once he saw Davis's driver's license, he knew he was going to arrest Davis because of the warrant. This, however, does not change the fact that McDonald testified that he observed a pistol on the floorboard while Davis was reaching towards the glove box to obtain the vehicle's registration. That McDonald planned on arresting Davis regardless of the pistol is irrelevant.

Nor do the demonstrative photographs attempting to recreate the scene, which were used by Davis's attorney at the evidentiary hearing, undermine McDonald's testimony. McDonald was a credible witness and his position that he saw the pistol on the floorboard is credible. McDonald testified that the pistol discovered in Davis's vehicle was much larger and appeared at a different angle on the floorboard than the pistol used in the demonstrative photographs. In addition, the photographs showed Davis's attorney, not Davis, sitting in the driver's seat. The photographs do not have any evidentiary value.

Because McDonald's request for Davis to provide his identification was appropriate,

and because he observed a pistol on the floorboard of the vehicle, the length of the stop was appropriate and McDonald had probable cause to arrest Davis and search the vehicle.

### C. The Pistol Would Have Been Inevitably Discovered

Even if McDonald did not see the pistol on the floorboard of the vehicle, he testified that after he saw Davis's driver's license, he knew he was going to arrest Davis because he had knowledge of his outstanding felony warrant. Therefore, suppression of the pistol as evidence is inappropriate under the inevitable discovery doctrine and inventory search exception to the warrant requirement. *See, e.g. Wong Sun v. United States*, 371 U.S. 471 (1963); *Nix v. Williams*, 457 U.S. 431 (1984).

### V.  CONCLUSION

For the reasons stated above, Davis's motion to suppress is DENIED. The Government has met its burden in establishing that the search of Dent's vehicle was constitutional.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  September 10, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 10, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160